**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE PLASTIC SURGERY CENTER, P.A.,<br><br>Plaintiff,<br><br>v.<br><br>UNITEDHEALTHCARE INSURANCE COMPANY, *et al.*,<br><br>Defendants. | Civil Action No. 24-10856 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant UnitedHealthcare Insurance Company's ("Defendant") Motion to Dismiss (ECF No. 12) Plaintiff The Plastic Surgery Center, P.A.'s ("Plaintiff") Complaint (ECF No. 1-1). Plaintiff opposed (ECF No. 18), and Defendant replied (ECF No. 19). The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons below, Defendant's Motion to Dismiss is granted in part and denied in part.

**I.    BACKGROUND**

   **A.    Factual Background**[1]

Plaintiff is a New Jersey corporation engaged in the practice of plastic and reconstructive surgery. (Compl. ¶¶ 1, 4, ECF No. 1-1.) Defendant is a health insurance company that acted as an authorized agent and administrator of a medical benefits plan ("the Plan") for one of Plaintiff's individual patients, A.F. (the "Patient"). (*Id.* ¶ 2.) Plaintiff is a non-participating, or

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

out-of-network, healthcare provider under the Plan, which means that it is paid at a "significantly lower" rate than participating providers. (*Id.* ¶¶ 5, 21.)

The Patient required specialized medical services, specifically a bilateral breast reconstruction (the "Surgical Procedure"), and consulted with Dr. Ibrahim, one of Plaintiff's physician-employees. (*Id.* ¶¶ 6-10.) Plaintiff refused to perform the Surgical Procedure because the Plan's non-participating rate did not provide sufficient compensation to justify Dr. Ibrahim's performance. (*Id.* ¶¶ 11-12.) On or about August 21, 2020, one of Plaintiff's employees contacted Defendant and offered to perform the Surgical Procedure at the "in-network rate." (*Id.* ¶ 15.) On September 4, 2020, Defendant issued a letter to the Patient and Plaintiff regarding the Surgical Procedure. (*Id.* ¶ 20.) On or about September 16, 2020, the parties "entered into a single case rate agreement" (the "Agreement") where Plaintiff would be paid the in-network rate for preapproved Current Procedural Technology[2] ("CPT") codes that were applicable to the Surgical Procedure, and in exchange, Plaintiff forfeited its right to balance bill the Patient.[3] (*Id.* ¶¶ 16-18.)

On or about September 21, 2020, pursuant to the Agreement, and in reliance on the promises and representations made by Defendant, Plaintiff performed the Surgical Procedure. (*Id.* ¶ 23.) Plaintiff billed a total of $113,950 for the Surgical Procedure, but Defendant issued a payment of only $17,178.60. (*Id.* ¶¶ 25-26.) Plaintiff sought payment of the outstanding balance, but Defendant refused. (*Id.* ¶ 27.)

---

[2] A CPT code is a "number that identifies and describes the services performed by [a] medical provider in accordance with a systematic listing published by the American Medical Association." *Merling v. Horizon Blue Cross Blue Shield of N.J.*, No. 04-4026, 2009 WL 2382319, at *2 (D.N.J. July 31, 2009).

[3] Balance billing is a practice in the insurance sector where a patient is "subject to being billed for the difference between the provider's charges and the amount paid by [the insurance provider]." *Franco v. Conn. Gen. Life Ins. Co.*, 647 F. App'x 76, 79 (3d Cir. 2016).

B.  **Procedural Background**

Plaintiff initially brought this case in the Superior Court of New Jersey, Monmouth County, and Defendant removed the case to this Court. (ECF No. 1.) The Complaint includes three counts: (1) breach of contract ("Count One"); (2) promissory estoppel ("Count Two"); and (3) negligent misrepresentation ("Count Three"). (Compl. ¶¶ 28-48.)

Defendant moves to dismiss the Complaint for three reasons: (1) the factual allegations supporting the purported contract are refuted by certain communications (the "Pre-Authorization Communications"); (2) Plaintiff's claims are expressly preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"); and (3) the Complaint fails to state a claim upon which relief can be granted. (*See generally* Def.'s Moving Br., ECF No. 12-1.)

II.  **LEGAL STANDARD**

Federal Rule of Civil Procedure[4] 8(a)(2) "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare

---

[4] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### III.   DISCUSSION

The Court finds that: (1) Plaintiff sufficiently pleads claims for breach of contract and promissory estoppel; and (2) Plaintiff fails to sufficiently plead a claim for negligent misrepresentation. The Court addresses each finding in turn.

#### A.   The Pre-Authorization Communications

As a preliminary matter, the Court briefly addresses the parties' disagreement as to the Pre-Authorization Communications, which include transcripts of the August 21, 2020, and September 16, 2020, calls, and a copy of the September 4, 2020, correspondence that Plaintiff references in its Complaint. (Compl. ¶¶ 15-16, 20.) Defendant asks the Court to consider these documents in evaluating Defendant's Motion. (Def.'s Moving Br. 9-10.) Plaintiff challenges the completeness of those documents and argues that a factual dispute exists concerning the "contradictory information" given in those documents. (Pl.'s Opp'n Br. 7-8, ECF No. 18.)

On a Rule 12(b)(6) motion, the Court may "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if

4

the complainant's claims are based upon these documents." *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)). Because the Pre-Authorization Communications present a factual dispute that cannot be decided at the motion to dismiss stage and because Plaintiff challenges the completeness of the factual record provided, the Court will not consider these documents. *See, e.g., Plastic Surgery Ctr., P.A. v. Cigna Health & Life Ins. Co.*, No. 17-2055, 2018 WL 2441768, at *6 (D.N.J. May 31, 2018) (finding consideration of materials proffered by defendants "not proper at [the motion to dismiss stage] because [p]laintiff raises factual disputes as to whether [the attached material] is the contract that underlies [the] breach of contract claim"); *Guidotti*, 716 F.3d at 772; *see also Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) ("When the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail."). Having addressed this preliminary dispute, the Court turns to ERISA preemption.

**B.    ERISA Preemption**

Defendant argues that Plaintiff's Complaint must be dismissed because its claims are subject to express preemption under § 514 of ERISA. (Def.'s Moving Br. 2, 10-17.) Specifically, Defendant argues that all of Plaintiff's claims "relate to" the Plan because "the Complaint's allegations are grounded in the scope of coverage under the Plan to determine what benefits are available to [the Patient]." (*Id.* at 12.) Plaintiff opposes, arguing that its claims are not preempted because it "seeks to enforce obligations independent of the Plan," and "the Agreement's passing reference to the Plan is tied solely to payment at the [promised 'in-network' rate] and does not require construction or interpretation of the Plan." (Pl.'s Opp'n Br. 18.)

The stated goal of ERISA is "'to promote the interests of employees and their beneficiaries in employee benefit plans' by ensuring benefit plans [are] well managed and [will] not leave plan

5

participants short-changed." *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 225 (3d Cir. 2020) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983)). To ensure "that ERISA's mandates supplanted the patchwork of state law previously in place . . . Congress enacted [S]ection 514(a)—a broad express preemption provision, which 'supersede[s] any and all [s]tate laws insofar as they may now or hereafter relate to any employee benefit plan.'" *Id.* at 226 (second and third alterations in original) (quoting 29 U.S.C. § 1144(a)). The reach of ERISA's express preemption provision applies not only to state statutes and regulations which "relate to" an ERISA-governed employee benefit plan, but also to state "common law causes of action." *Id.* (citing *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 294 (3d Cir. 2014)). The Supreme Court has recognized that, for purposes of express preemption, "a state law 'relates to' an employee benefit plan if it has either (1) a 'reference to' or (2) a 'connection with' that plan[.]" *Id.* (quoting *Shaw*, 463 U.S. at 96-97). The Third Circuit's decision in *Plastic Surgery Center* provides a framework to determine whether state law claims are preempted by ERISA, which the Court analyzes below. *See id.*

### 1. "Reference to"

Claims that make "reference to" an ERISA plan include both claims that "'act[ ] immediately and exclusively upon ERISA plans'" and those that are "'premised on'" a plan. *Id.* at 230 (alternation in original) (first quoting *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319-20 (2016); and then quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 140 (1990)). Claims that are "premised on" a plan include: "(a) claims predicated on the plan or plan administration, e.g., claims for benefits due under a plan, . . . or where the plan is a critical factor in establishing liability" and "(b) claims that involve construction of [the] plan[ ], . . . or require interpreting the plan's terms." *Id.* (alterations in original) (internal citations and quotation marks omitted).

Here, Plaintiff's claims do not make "reference to" the Plan such that they are preempted. First, the Complaint does not rely exclusively upon an ERISA plan and is not "predicated on the plan or plan administration." *Id.* (internal citation omitted). The existence of the ERISA plan is also not a "critical factor in establishing liability" for Plaintiff's claims. *Id.* (quoting *Ingersoll-Rand*, 489 U.S. at 139-40). Plaintiff's Complaint alleges that Defendant entered into a "single case rate agreement" that created an independent obligation for Plaintiff to pay the in-network rate for specific CPT Codes associated with the Surgical Procedure. (Compl. ¶¶ 16-18.) Plaintiff specifically pleads that "[u]nder the Plan, non-participating providers [such as Plaintiff] are not entitled to be paid at the in-network rate[.]" (*Id.* ¶ 21.) Since Plaintiff's claims are predicated on an independent contractual or quasi-contractual duty, and not on the Plan itself, § 514 does not preempt Plaintiff's state law claims. *See Plastic Surgery Ctr.*, 967 F.3d at 231; *see also Kindred Hosps. E., LLC v. Loc. 464A United Food & Com. Workers Union Welfare Serv. Benefit Fund*, No. 21-10659, 2021 WL 4452495, at *8 (D.N.J. Sept. 29, 2021) (collecting cases) ("The Third Circuit, as well as other courts, has consistently held that where the predicate of a claim is not an ERISA plan but an independent state-law created duty, Section 514(a) does not preempt the state-law claim.").

Defendant argues that Plaintiff's state law claims "relate to" the Plan because "the Complaint makes reference to Plaintiff's efforts to obtain coverage from [the] Plan." (Def.'s Moving Br. 12.) Defendant further argues that *Plastic Surgery Center* is distinguishable because in that case there were no benefits to out-of-network providers, whereas here the Plan provides for some out-of-network coverage. (Def.'s Reply Br. 6-7, ECF No. 19.) The Complaint, however, alleges that although "the Plan provides for benefits for non-participating providers," Plaintiff "refused to perform the Surgical Procedure based on the terms of the Plan[.]" (Compl. ¶¶ 11-12.)

7

Instead, Plaintiff specifically "sought to enter into an agreement with [Defendant] wherein [Plaintiff] would perform the Surgical Procedure in exchange for an agreed-upon rate of compensation." (*Id.* ¶ 13.) Plaintiff further alleges that Defendant, "aware that [Plaintiff] refused to perform the Surgical Procedure under the Plan as a non-participating provider, . . . began communicating with [Plaintiff] so that [Defendant] could secure the Surgical Procedure from [Plaintiff] that [the Patient] required." (*Id.* ¶ 14.) In this context, Plaintiff contacted Defendant "with the purpose of reaching an agreement wherein [Plaintiff] would perform the Surgical Procedure on [the Patient] in exchange for an agreed-upon rate of compensation." (*Id.* ¶ 15.) The Plan itself, therefore, is "not the source of the rights that [Plaintiff] seeks to enforce here." *Gotham City Orthopedics, LLC v. United Healthcare Ins. Co.*, No. 21-11313, 2022 WL 111061, at *4 (D.N.J. Jan. 12, 2022).

Second, Plaintiff's claims do not require construction of the Plan or the interpretation of its terms. The Complaint alleges that the Agreement includes payment at the "in-network rate" for the performance of the Surgical Procedure. (Compl. ¶¶ 16-18.) Determining the payment in this case would therefore only require "reviewing the fee schedule attached to [Defendant's] in-network provider agreements." *Plastic Surgery Ctr.*, 967 F.3d at 233. This analysis does not require the Court to examine the Plan beyond a "'cursory examination'" which "do[es] not entail 'the sort of exacting, tedious, or duplicative inquiry that the preemption doctrine is intended to bar.'" *Id.* at 234 (internal citation omitted); *see also Premier Orthopaedic Assocs. of S. N.J., LLC v. Anthem Blue Cross Blue Shield*, 675 F. Supp. 3d 487, 492-93 (D.N.J. 2025) (declining to find preemption at the motion to dismiss stage where "nothing in the [c]omplaint directs th[e] Court to consider the patient's healthcare benefit plan").

2. *"Connection With"*

The Third Circuit focuses on three inquiries to determine whether claims have a "connection with" an ERISA plan. *Plastic Surgery Ctr.*, 967 F.3d at 235. First, the claims have a "connection with" the ERISA plan if they "'directly affect the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries.'" *Id.* (quoting *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 245 (5th Cir. 1990)). As an out-of-network healthcare provider, Plaintiff "may not pursue its own [S]ection 502(a) cause of action" without an assignment of benefits. *Id.* at 236 (citing *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015)). Plaintiff's claims, therefore, are not preempted because "they arise out of a relationship ERISA did not intend to govern at all." *Id.*

Second, the claims have a "connection with" the ERISA plan if they "interfere with plan administration." *Id.* at 235 (first citing *Menkes*, 762 F.3d at 295-96; and then citing *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 385 (5th Cir. 2011)). Here, as the Court has already explained, Plaintiff's claims do not arise from the Plan, but rather from a single case rate agreement that Plaintiff alleges the parties entered into over the phone. (Compl. ¶¶ 16-18.) Plaintiff's claims, therefore, "would merely result in a one-time payment of damages based on the specific agreement reached by the parties that does not impermissibly interfere with plan administration." *Plastic Surgery Ctr.*, 967 F.3d at 237 (internal citation omitted).

Third and finally, the claims have a "connection with" the ERISA plan if they "undercut ERISA's stated purpose." *Id.* at 235 (first citing *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 84-85 (3d Cir. 2012); and then citing *Kollman v. Hewitt Assocs.*, 487 F.3d 139, 149 (3d Cir. 2007)). As the Court in *Plastic Surgery Center* explained, the purpose of ERISA, "protection of plan participants and beneficiaries[,] is not advanced by extending express preemption to

9

out-of-network providers[.]" *Id.* at 238. Instead, consideration of ERISA's objectives supports the conclusion that Plaintiff's claims are not preempted here. *See id.*

Having considered the facts and circumstances of the instant case, this Court declines to find that Plaintiff's state law claims have an impermissible "reference to" or "connection with" the Plan. As such, Plaintiff's state law claims are not expressly preempted by § 514.

### C. Breach of Contract (Count One)

Under New Jersey law, a breach of contract claim requires four elements: (1) "the parties entered into a contract containing certain terms;" (2) the plaintiff performed its contractual obligations; (3) the defendant breached the contract; and (4) the plaintiff suffered damages because of the defendant's breach. *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021) (quoting *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016)).

In this case, Plaintiff has adequately alleged facts for each element of its breach of contract claim by alleging that: (1) the parties entered into a "single case rate agreement . . . wherein [Plaintiff] would be paid the in-network rate for certain preapproved CPT Codes that were applicable to the performance of the Surgical Procedure" (Compl. ¶ 16); (2) Plaintiff fulfilled its obligation by performing the Surgical Procedure (*id.* ¶ 23); (3) Defendant "failed to reimburse [Plaintiff] at its 'in-network rate' for the CPT Codes billed" (*id.* ¶ 26); and (4) Plaintiff suffered damages because of Defendant's breach (*id.* ¶ 33).

Defendant argues that the Complaint fails to adequately allege a contract containing certain terms, emphasizing that Plaintiff fails to allege the price that the agreement contemplated by relying on references to the undefined "in-network rate." (*See* Def.'s Moving Br. 18-21.) Plaintiff maintains that the parties agreed on the essential terms, including the price at the in-network rate and the Surgical Procedure. (Pl.'s Opp'n Br. 29-30.) The Court finds that Plaintiff's allegations,

10

which reference the in-network rate and specify certain CPT Codes for the Surgical Procedure, are sufficient to adequately plead an agreement between the parties.

The Third Circuit, in *Plastic Surgery Center, P.A. v. Aetna Life Ins. Co.*, found that a medical provider plaintiff adequately pled breach of contract where it alleged that a defendant plan administrator made an agreement with plaintiff to pay for services of insured patients' surgeries at an in-network level. 967 F.3d 218, 231-32 (2020). Even though the plaintiff medical provider in *Plastic Surgery Center* did not provide an exact price term in the agreement, the Court found sufficient the plaintiff's allegations that the parties agreed that the plaintiff would perform the surgeries in exchange for payment from the defendant plan administrator for a "reasonable amount" and at the in-network level. *See id.*

The Third Circuit's finding applies with equal force here. Even though Plaintiff does not allege that the Agreement contained a specific dollar amount, it has alleged that the parties entered into a single case rate agreement in which the parties agreed that Plaintiff would be paid the in-network rate for certain preapproved CPT Codes applicable to the surgery. (Compl. ¶¶ 15-16.) At the pleading stage, as this Court has previously found, a plaintiff's reference to the in-network rate as the compensation for medical procedures based on CPT Codes suffices as a certain term of the agreement.[5] *E.g., Samra Plastic & Reconstructive Surgery v. Cigna Health & Life Ins. Co.*,

---

[5] The two cases that Defendant cites to support its argument that there are not "certain terms" to enforce here are inapposite. (*See* Def.'s Moving Br. 20-21.) In both *Premier Orthopaedic Associates of S. NJ, LLC v. Anthem Blue Cross Blue Shield* and *East Coast Spine Joint v. Anthem Blue Cross Blue Shield*, the plaintiffs based their claims for breach of an implied contract entirely on preauthorization and did not include information concerning the types of medical services or the costs that the authorization allegedly covered. 675 F. Supp. 3d at 494; No. 22-04841, 2023 WL 3559704, at *5-6 (D.N.J. Apr. 27, 2023). Here, Plaintiff not only specifies the rate of compensation as the "in-network" rate, but it also specifies the CPT Codes which cover the surgery for which the rate applies. (*See* Compl. ¶¶ 15-16.)

11

No. 23-22521, 2024 WL 3444273, at *6 (D.N.J. July 17, 2024) (finding unpersuasive the defendant plan administrator's argument that the agreement lacked a definite price term because the parties specified a billing method pursuant to identified CPT Codes); *see also Baer v. Chase*, 392 F.3d 609, 619 (3d Cir. 2004) (citing *Moorestown Mgmt., Inc. v. Moorestown Bookshop, Inc.*, 249 A.2d 623, 628 (N.J. Ch. 1969)) (explaining that a contract "is not unenforceable if the parties specify a practicable method by which they can determine the amount"). In any event, and as the New Jersey Supreme Court has held, "the precise terms of [an] obligation are factual matters better fleshed out in discovery." *Gotham City Orthopedics, LLC v. United Healthcare Ins. Co.*, No. 21-11313, 2022 WL 111061, at *5 (D.N.J. Jan. 12, 2022) (citation omitted). Plaintiff has therefore plausibly pled a breach of contract claim, and the Court, accordingly, denies Defendant's Motion to Dismiss Count One of the Complaint.

### D.     Promissory Estoppel (Count Two)

Under New Jersey law, a claim of promissory estoppel "is made up of four elements: (1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Goldfarb*, 245 A.3d at 577 (quoting *Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington*, 944 A.2d 1, 19 (N.J. 2008)). Defendant challenges the first element—that there was a clear and definite promise. (Def.'s Moving Br. 21-24.)

Here, Plaintiff alleges that Defendant represented and promised that it would pay the in-network rate for specific CPT Codes involved in the Surgical Procedure. (*See* Compl. ¶¶ 17-18, 35.) The Court finds that Defendant's promise is sufficiently clear and definite to state a claim of promissory estoppel. Plaintiff alleges that Defendant's representative authorized specific CPT Codes for the Surgical Procedure and promised Plaintiff that it would pay the in-network rate for

the Surgical Procedure. (*Id.*) In particular, during the phone calls between the parties' representatives, Plaintiff alleges that it identified the specific Surgical Procedure and the Surgical Procedure's required CPT Codes, for the in-network rate, in exchange for forfeiting its right to balance bill the Patient. (*Id.* ¶¶ 15-18.) The promise was not subject to change upon any conditions, and the CPT codes were agreed upon. (*Id.* ¶¶ 17-18); *cf. Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563, 569, 574, 576 (D.N.J. 2002) (finding an agreement indefinite because it explicitly stated that it was "subject to change at any time"). At any rate, "in considering whether a promise was clear and definite for a promissory estoppel claim, New Jersey courts 'have tended to relax strict adherence . . .' in favor of a more equitable approach." *United Cap. Funding Grp., LLC v. Remarkable Foods, LLC*, No. 21-3291, 2022 WL 2760023, at *4 (D.N.J. July 14, 2022) (quoting *Pop's Cones, Inc. v. Resorts Int'l Hotel, Inc.*, 704 A.2d 1321, 1325-27 (N.J. Super. Ct. App. Div. 1998)).

The Court also finds that Plaintiff has adequately alleged that Defendant expected Plaintiff would rely on such a promise and that Plaintiff did in fact rely on that promise. Plaintiff initially refused to perform the Surgical Procedure and agreed to perform the procedure only after it was able to negotiate the in-network rate of compensation with Defendant. (Compl. ¶¶ 12-23.) As such, the timeline of events as pled adequately alleges reasonable reliance on Defendant's communication. The Court, accordingly, denies Defendant's Motion to Dismiss Count Two of the Complaint.

  **E.**  **Negligent Misrepresentation (Count Three)**

Plaintiff alleges that Defendant's representation that it would pay Plaintiff at the in-network rate for the Surgical Procedure constituted a negligent misrepresentation and that "[Defendant] owed a duty to [Plaintiff] not to make false representations." (*Id.* ¶¶ 43-46.) Defendant argues,

13

*inter alia*, that Plaintiff has not adequately alleged an independent duty of care owed by Defendant to Plaintiff. (Def.'s Moving Br. 25-26; Def.'s Reply Br. 12.) Plaintiff argues that it has adequately pled that Defendant owed a duty of care to Plaintiff by alleging that the parties were in privity of contract through the Agreement. (Pl.'s Opp'n Br. 35.)

Under New Jersey law, a claim of negligent misrepresentation requires a plaintiff to adequately allege that a defendant negligently made an incorrect statement, upon which the plaintiff justifiably relied, and that the plaintiff sustained an injury as a result of that reliance. *Green v. Morgan Props.*, 73 A.3d 478, 493-94 (N.J. 2013). Where a plaintiff and defendant have a contractual relationship, the economic loss doctrine provides that "a tort remedy [will] not arise from [the parties'] contractual relationship unless the breaching party owes an independent duty imposed by law." *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 278, 280 (N.J. 2002) (stating "that under New Jersey law a party cannot maintain a negligence action, in addition to a contract action, unless the plaintiff can establish an independent duty of care"). A plaintiff may not proceed with a negligent misrepresentation claim for "false promises to perform as contracted." *Cudjoe v. Ventures Tr. 2013I-H-R by MCM Cap. Partners, LLP*, No. 18-10158, 2019 WL 949301, at *4 (D.N.J. Feb. 26, 2019) (quoting *Cioni v. Globe Specialty Metals, Inc.*, 618 F. App'x 42, 47 (3d Cir. 2015)); *see also Shinn v. Champion Mortg. Co.*, No. 09-13, 2010 WL 500410, at *4 (D.N.J. Feb. 5, 2010) (noting that "the mere failure to fulfill obligations encompassed by the parties' contract is not actionable in tort").

Here, Plaintiff's allegations constitute false promises to perform as contracted and therefore are barred by the economic loss doctrine. Plaintiff argues that "it was in privity of contract with [Defendant] through the Agreement" (Pl.'s Opp'n Br. 35), but it does not allege or argue an "independent duty imposed by law" separate from the Agreement. *See Saltiel*, 788 A.2d

14

at 278, 280. Because Plaintiff's allegations speak directly to Defendant's performance under the Agreement, Count Three is therefore barred by the economic loss doctrine. *See Montclair State Univ. v. Oracle USA, Inc.*, No. 11-2867, 2012 WL 3647427, at *11 (D.N.J. Aug. 23, 2012) (dismissing negligent misrepresentation claim where the operative complaint relied on obligations created by the parties' agreement and therefore was not premised on an independent duty). The Court, accordingly, grants Defendant's Motion to Dismiss Count Three of the Complaint.

## IV.   CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is granted in part and denied in part. The Court will issue an Order consistent with this Memorandum Opinion.

Dated: October 14th, 2025

*/s/ Michael A. Shipp*
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**